1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  RANDAL RUIZ,                  )   Civil No. 05-1871-WQH(LSP)
                                  )
12              Plaintiff,        )
                                  )   REPORT AND RECOMMENDATION
13  v.                            )   GRANTING IN PART AND DENYING
                                  )   IN PART DEFENDANT'S MOTIONS TO
14  J. LAGUNA, et al.,            )   DISMISS AND TO STRIKE
                                  )   (12-1, 12-2)
15              Defendants.       )
    _____)

16

17

18          Randal Ruiz (hereinafter "Plaintiff"), a state prisoner

19  proceeding pro se, has filed a Complaint under the Civil Rights

20  Act, 42 U.S.C. § 1983.  Defendants have filed a Motion to Dismiss

21  the Complaint, a Motion to Strike, and Supplemental Briefing Re:

22  Motion to Dismiss the Complaint.  Plaintiff has filed an

23  Opposition to Defendants' Motion. Defendants have filed a Reply

24  to Plaintiff's Opposition.  The Court, having reviewed

25  Plaintiff's Complaint and Opposition to Defendants' Motion to

26  Dismiss the Complaint, Defendants' Motions to Dismiss and to

27  Strike, Defendants' Supplemental Briefing, and the documents

28  lodged therewith, finds that the Defendants are partially

entitled to the relief requested and recommends that the Motions to Dismiss and to Strike be **GRANTED in part and DENIED in part WITH LEAVE TO AMEND**.

## I.

### FACTUAL ALLEGATIONS

The Court has distilled Plaintiff's factual allegations significantly.  The following are the relevant facts that the Court understands Plaintiff to raise in both his original Complaint and his Opposition to Defendants' Motion to Dismiss.

Plaintiff is incarcerated at R.J. Donovan Correctional Facility.  Plaintiff alleges that on March 4, 2005 he presented his Petition for Review, exhibits, and a Complaint to Defendant Laguna for photocopying.  (Complaint at 3).  Defendant Laguna denied Plaintiff the photocopies.  According to Plaintiff, the law library clerk informed Plaintiff that the copy machine was broken and the library could only photocopy documents for inmates with verifiable court deadlines.  (Complaint at 3).  Without a verifiable deadline, the library would send the documents to another location to be copied.  Defendant Laguna corroborated these statements.  (Complaint at 3).

However, according to Plaintiff, the copies were needed immediately, as Plaintiff had a March 6, 2005 filing deadline for his Petition for Review to the California Supreme Court. Plaintiff alleges Defendant Laguna already knew of this filing deadline, as Laguna was present on February 22, 2005 when Plaintiff discussed the filing deadline with the senior librarian, Mrs. Peterson.  (Complaint at 3).  Plaintiff further alleges that he reminded Defendant Laguna of the filing deadline

1    after Laguna denied the photocopies.  However, Defendant Laguna
2    insisted that Plaintiff did not have an impending deadline and
3    denied Plaintiff the photocopies.  (Complaint at 3).

4        Plaintiff contends that this denial of photocopies was
5    intentional.  (Opposition to Defendants' Motion to Dismiss at 5).
6    According to Plaintiff, forms documenting the deadline for
7    Plaintiff's Petition for Review were already on file with the law
8    library, and Plaintiff directed Defendant Laguna's attention to
9    these documents.  (Opposition to Defendants' Motion to Dismiss at
10   3).  This, coupled with Defendant Laguna's presence during
11   Plaintiff's previous conversation with Mrs. Peterson, provided
12   Defendant Laguna with adequate notice of the deadline.
13   (Opposition to Defendants' Motion to Dismiss at 3)  Defendant
14   Laguna even discussed prison photocopy policies with Plaintiff,
15   stating that he was not competent to assess the validity of
16   Plaintiff's purported filing deadline and thus did not have
17   authority to grant Plaintiff emergency photocopies.  (Complaint
18   at 3).

19       Plaintiff contends that, in spite of this knowledge of
20   Plaintiff's filing deadline, Defendant purposefully, and with
21   "discriminatory intent," denied him the photocopies he needed.
22   (Opposition to Defendants' Motion to Dismiss at 5).  Defendant
23   Laguna further evidenced this "discriminatory intent" by granting
24   two "similarly situated" African-American inmates photocopies
25   during the same morning session at the law library.  (Opposition
26   to Defendants' Motion to Dismiss at 4).

27       In an effort to meet the filing deadline after this
28   initial, allegedly intentional denial, Plaintiff alleges that he

1   served a CDC602 on Defendant Seibel March 5, 2005, requesting

2   emergency photocopies.[1]  Defendant Seibel requested Plaintiff's

3   court order so as to verify the emergency.  (Complaint at 3).

4   Plaintiff returned to his cell to retrieve the court order, but

5   was required to stay in his cell due to a "modified program."  As

6   a result, Plaintiff contends that since he could not present the

7   court order to Defendant Seibel, Defendant Seibel could not

8   provide the needed photocopies and remedy Defendant Laguna's

9   allegedly errant earlier action.  (Complaint at 3-4).  Plaintiff

10  noted that during this "modified program," other prisoners were

11  able to leave the unit.  Plaintiff contends that Defendants

12  Clardy, Melvin, and Armoskos also contributed to the

13  circumstances by not adequately resolving Plaintiff's grievance.

14  (Complaint at 4). Plaintiff alleges that without the requisite

15  photocopies, he could not meet the March 6, 2005 filing deadline

16  set for his Petition for Review.  As a result, Plaintiff filed a

17  Motion Seeking Permission to File a Late Petition.  However, on

18  March 25, 2005, the California Supreme Court denied this motion.

19  (Complaint at 4).

20      Plaintiff also alleges that on August 31, 2005, he

21  submitted a Consumer Complaint to Defendant Laguna for

22  photocopying.  (Complaint at 4).  When Plaintiff returned on

23  September 1, 2005 to collect the photocopies he was informed that

24  they were lost, along with the original.  The original and the

25  copies were never returned to Plaintiff.  The original Consumer

26  Complaint concerned the theft of Plaintiff's magazines by either

27

28

---

[1]   A "CDC602" is a form used to request emergency copies.

4                                    05cv1871

1   inmates or staff.  (Complaint at 4-5).[2]

2       Plaintiff further contends that he submitted a complaint

3   pertaining to a separate matter, *Ruiz v. Pasadena*, CV-03-4455-

4   FMC-(CW), for photocopying.  This complaint had a filing deadline

5   of September 9, 2005.  (Complaint at 5).  According to Plaintiff,

6   he did not receive the copies or original in a timely manner, and

7   missed the filing deadline.  The original was never returned to

8   Plaintiff and he did not receive the copies until September 13,

9   2005, four days after the complaint was due.  (Complaint at 5).

10   In his Complaint, however, Plaintiff does not specify when he

11   provided this material for photocopying.[3]

12       On July 19, 2005, Plaintiff was placed in segregation.  In

13   segregation, Plaintiff could not obtain paper, envelopes, postage

14   stamps, or legal resources of any kind.  Plaintiff claims that,

15   as a result of this deprivation, he missed a July 28, 2005 court

16   deadline.[4]  (Complaint at 5).

17       Currently Defendants Manny and Laguna insist on sending

18   documents to the Central Library to be photocopied.  According to

19   Plaintiff, this causes delay and risks theft, loss, and privacy

20   invasion.  (Complaint at 5).

21                            **II.**

22   _____

[2] Since Plaintiff has not alleged that pursuit and redress of this consumer claim has been completely forestalled by negligent state action (i.e. no filing deadlines have been missed), this specific denial of photocopies is not at issue in this case and will not be addressed.

[3] Nor does Plaintiff claim that the denial of photocopies has permanently deprived him access to the courts for this particular claim.  As a result, the Court will also not address this particular denial of photocopies.

[4] Plaintiff, however, does not relate this deadline to any particular procedurally barred action.  Without actual and complete denial of access to the courts, the Court will not consider the constitutionality of this alleged deprivation.

1

## PROCEDURAL HISTORY

2       On September 28, 2005, Plaintiff filed a Complaint pursuant

3   to 42 U.S.C. § 1983 alleging that (1) the actions of the

4   Defendants deprived him of his right of access to the courts

5   (Complaint at 3), (2) Plaintiff's placement in "segregation"

6   caused him to miss a court date of July 28, 2005, depriving him

7   of access to the courts (Complaint at 5), (3) Plaintiff is now

8   "afraid" to entrust his court documents to the prison staff due

9   to fear of delay in filing, compromised confidentiality, and

10  possible retaliation (Complaint at 5), and (4) "segregation" in

11  general is a calculated, unconstitutional scheme predicated on

12  preventing an individual from exercising his First Amendment

13  Rights (Complaint at 9).  Plaintiff sued all Defendants both as

14  individuals and in their official capacity.  (Complaint at 2).

15      On April 7, 2006, Defendants filed a Motion to Dismiss

16  Complaint and a Motion to Strike pursuant to Federal Rules of

17  Civil Procedure 12(b)and 12(b)(6).  Defendants argue that the

18  Court should dismiss Plaintiff's Complaint because (1) all named

19  Defendants are entitled to sovereign immunity when sued in their

20  official capacity, (2) Plaintiff failed to exhaust his

21  administrative remedies as required by 42 U.S.C. § 1997e(a), (3)

22  Plaintiff failed to state a claim upon which relief can be

23  granted, and (4) Plaintiff cannot establish that he suffered any

24  actual injury as a result of Defendants' conduct.  In addition,

25  Defendants contend that Plaintiff's prayer for punitive damages

26  must be stricken because Plaintiff failed to allege any facts

27  demonstrating either evil motive or recklessness as required by

28  *Smith v. Wade*, 461 U.S. 30, 56 (1983).

1    On June 1, 2006, Defendants filed a Supplemental Briefing

2    Re: Motion to Dismiss the Complaint.  The Supplemental Briefing

3    urged the Court to grant the Motion to Dismiss because Plaintiff

4    failed to respond to the Motion.  Defendants also attached a

5    conformed copy of the April 13, 2005 ruling of the California

6    Supreme Court in Plaintiff's criminal appeal to illustrate that

7    Plaintiff has not suffered an injury.

8    On June 13, 2006, the Court granted Plaintiff's

9    Emergency Motion for Extension of Time, allowing Plaintiff to

10   file a late Opposition to Defendant's Motion to Dismiss.

11   On July 31, 2006, Plaintiff filed a late Opposition to

12   Defendants' Motion to Dismiss the Complaint, arguing that,

13   contrary to Defendants' assertion, (1) Plaintiff need not submit

14   evidence and affidavits in support of his complaint, (2)

15   Defendant Laguna, after hearing Plaintiff's statements and seeing

16   Plaintiff's documents, knew of Plaintiff's March 6, 2005 filing

17   deadline for his Petition for Review and intentionally denied

18   Plaintiff the necessary photocopies, and (3) Plaintiff exhausted

19   his administrative remedies prior to filing the complaint.

20   On August 8, 2006 Defendants filed a Reply to Plaintiff's

21   Opposition to the Motion To Dismiss the Complaint arguing (1)

22   Plaintiff cannot use inmate appeals that pre-dated the alleged

23   injury to satisfy the exhaustion requirement, (2) the issues

24   raised in the pre-existing appeals are stale and factually

25   unrelated to the allegations contained in the Complaint, and as a

26   result, fail to satisfy the exhaustion requirement, and (3)

27   Plaintiff cannot add new allegations to his original Complaint

28   through the use of an opposition, he must instead seek leave of

1    the court to amend his Complaint.

2                         **III.**

3                 **PARTIES' ARGUMENTS**

4       Defendants move to dismiss and strike on six separate

5    grounds.  They argue (1) that sovereign immunity shields each

6    defendant from potential liability for any action undertaken in

7    their official capacity, (2) Plaintiff failed to exhaust his

8    administrative remedies prior to filing his Complaint, as

9    required by 42 U.S.C. § 1997e(a), (3) Plaintiff failed to state a

10    claim upon which relief can be granted, (4) Plaintiff did not

11    sustain an actual injury, (5) Plaintiff asserted a frivolous

12    underlying cause of action and was not denied access to the

13    courts, and (6) based on the facts alleged, Plaintiff's prayer

14    for punitive damages is not appropriate in this instance and

15    should be stricken. Each point is discussed below.

16 **A.  Sovereign Immunity**

17       Defendants Laguna, Seibel, Armoskos, Clardy, and Melvin

18    argue that any complaint against them in their official capacity

19    must be dismissed due to the protection afforded by sovereign

20    immunity.  They contend that the Eleventh Amendment "immunizes

21    states from private damage actions brought in federal court."

22    *Henry v. County of Shasta*, 132 F.3d 512, 517 (9th Cir. 1997).

23    This protection extends to individuals and thus bars any suit for

24    damages against a state official in his official capacity.

25    *Regents of the University of California v. Doe*, 519 U.S. 425, 429

26    (1997); *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir.

27    1999).

28       Yet, contrary to this precedent, Plaintiff seeks monetary

1   relief in his Complaint and specifies that these damages are

2   sought against all Defendants in their official capacities.  As a

3   result, Defendants contend that this Court lacks jurisdiction to

4   hear the claims.

5   **B.  Rule of Exhaustion**

6   (1)  Defendants' Motion to Dismiss and to Strike

7          42 U.S.C. § 1997e(a) requires a prisoner to completely

8   exhaust his administrative remedies prior to filing a 1983

9   action.  Defendants argue that Plaintiff ignored this requirement

10  and failed to exhaust the administrative review process set out

11  in Title 15 of the California Code of Regulations prior to filing

12  this complaint.  According to Defendants, to exhaust

13  administrative remedies, a California inmate must complete four

14  steps: (1) attempted informal resolution, (2) first formal level

15  appeal, (3) second formal level appeal, and (4) third, or

16  director's, level appeal.  Cal. Code Regs. 15 § 3084.5.  Under

17  this scheme, the administrative process is exhausted only after

18  the inmate receives a decision from the Director.  Cal. Dep't of

19  Corrections Operations Manual, § 54100.11 ("Levels of Review");

20  *Barry v. Ratelle*, 985 F.Supp. 1235, 1237-38 (S.D. Cal. 1997).

21         Defendants emphasize that Plaintiff did not provide the

22  relevant identification numbers for any previously filed inmate

23  appeals, nor did he provide the results of those appeals, as

24  requested by the form complaint.  Plaintiff instead flatly

25  asserted compliance with the exhaustion rule.

26         According to Defendants, this likely results from

27  Plaintiff's failure to actually exhaust his administrative

28  remedies.  Plaintiff filed an inmate appeal, log no. RJD-05-465

1    on March 23, 2005, relating to library access.  This appeal was

2    denied at the informal level, partially granted at the first

3    formal level of review, and then denied at the second formal

4    level of review.  However, according to the declaration of J.T.

5    Stovall, this appeal was never advanced to the third, or

6    director's level of review.  (Decl. of J.T. Stovall at 3; *see*

7    *also* Decl. of N. Grannis at 3)

8        Defendants further fault Plaintiff for not adequately

9    explaining why he failed to exhaust his administrative remedies,

10   even though the form complaint explicitly requests an

11   explanation.

12       Thus, Defendants contend that since Plaintiff failed to

13   complete this exhaustion process prior to filing suit, and since

14   Plaintiff did not allege that his ability to exhaust the process

15   was thwarted by prison officials, his Complaint should be

16   dismissed.  *Barry*, 985 F.Supp. at 1237-38; 42 U.S.C. § 1997e(a).

17   (2)  Plaintiff's Opposition to Defendants' Motion to Dismiss

18       In his Opposition to Defendants' Motion to Dismiss,

19   Plaintiff counters Defendants' insistence that he provide

20   evidence of any previously exhausted prisoner appeals.  Plaintiff

21   argues that he does not have the burden of producing this

22   evidence for the Court.  He cites *May v. Baldwin*, 849 F.2d 409,

23   412-13 (9th Cir. 1988) to support his contention that courts

24   should not weigh competing evidence when addressing a motion to

25   dismiss.  Instead, they should accepted any unrefuted allegations

26   as true and construe the complaint in the light most favorable to

27   the Plaintiff.

28       Plaintiff also argues that, contrary to Defendants'

1   assertions, he did in fact exhaust his administrative remedies by

2   advancing a separate inmate appeal, RJD 04-1037, to the Third

3   Level of Review on May 25, 2005.  This appeal contained

4   allegations of "trust account fraud" at the first level of

5   review.  At the second level of review, Plaintiff added the

6   assertion that the confidentiality of his legal work was

7   compromised by the design of the prison law library.[5]

8       Although the foregoing appeal was already pending when the

9   presently complained-of injury occurred, and as a result does not

10   technically satisfy the specific exhaustion requirements of

11   42 U.S.C. § 1997e(a), Plaintiff argues that it addresses

12   substantially similar issues to those raised in the Complaint

13   pending before this Court, and instead satisfies the general

14   purpose of the statute.  Plaintiff contends that any

15   investigation triggered by appeal no. RJD 04-1037 would logically

16   address the same denial of access claims raised in both the

17   present Complaint, and the inmate appeal (RJD 05-465) that

18   Defendants argue was not advanced past the second level of

19   review.  As a result of this overlap, any further pursuit of RJD

20   05-465 would have proven futile.

21   (3)  Defendants' Reply to Plaintiff's Opposition to Defendants'

22   Motion to Dismiss the Complaint

23       Defendants counter that Plaintiff is barred from using

24   inmate appeal RJD-04-1037 to satisfy the exhaustion requirement

25   as the appeal was already pending when the alleged injury

26   occurred.  As elucidated in *Ornelas v. Giurbino*, 358 F. Supp. 2d

27

28   [5]

    The inmate appeal also contains a completely unrelated allegation
    regarding an unwarranted denial of "canteen".

955, 960 (S.D. Cal. 2005), an inmate may not rely on a pre-existing inmate appeal to satisfy the exhaustion requirement.

Defendants argue that to allow the usage of such pre-existing appeals to satisfy the exhaustion requirement would defy logic. The purpose of the exhaustion requirement is to curtail frivolous lawsuits by providing administrators and Defendants with adequate notice of prison problems prior to any filing of suit. This affords prison administrators the opportunity to remedy legitimate problems and affords potential Defendants the opportunity to amend problematic behavior, without the resource-consuming involvement of the court system. Yet if an inmate appeal predates the alleged injury, this notice will not be provided to prison administrators, defeating the overriding purpose of the exhaustion requirement.

Defendants also counter that even if inmate appeal RJD-04-1037 is not barred as a result of predating the alleged injury, it should be barred because the allegations contained in this appeal do not relate to the charges brought in Plaintiff's original complaint.

As stated above, in inmate appeal RJD-04-1037, Plaintiff complained of "trust account fraud" at the first level of review. At the second level of review, Plaintiff added the claims that the confidentiality of his legal work was compromised by the unfortunate interior design of the prison law library and that he was being denied canteen.

Defendants contend that these allegations are completely unrelated to the denial of access to the courts claims raised in Plaintiff's original Complaint. In the Complaint, Plaintiff

1  alleges that he was constitutionally injured when he was denied

2  photocopies and subsequently missed a filing deadline.  Inmate

3  appeal RJD-04-1037 makes no mention of any denial of photocopies.

4  As a result, prison administrators were not on notice regarding

5  the problem when this appeal was filed, and could not remedy the

6  situation.  To allow such unrelated claims to satisfy the

7  exhaustion requirement would undermine the purposes of the

8  exhaustion requirement - namely the curtailment of frivolous

9  suits and the expedient remedy of problematic prison conditions.

10  **C. Failure to State a Claim**

11  (1) Defendants' Motion to Dismiss and to Strike

12      In their Motion to Dismiss and to Strike, Defendants

13  contend that Plaintiff's Complaint fails to state a claim upon

14  which relief can be granted, as Plaintiff does not advance a

15  cognizable legal theory, or fails to plead sufficient facts to

16  support a cognizable theory.  *Balistreri v. Pacifica Police*

17  *Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Thus, Defendants move

18  to dismiss under Fed. R. Civ. P. Rule 12(b)(6).

19      Defendants argue that the Fourteenth Amendment was only

20  intended to prevent "deliberate" or "intentional" abuse of

21  government power.  Defendants rely largely on *Daniels v.*

22  *Williams*, 474 U.S. 327 (1986) for this proposition.  Citing

23  *Daniels* as support, Defendants posit that negligence alone does

24  not constitute a deprivation within the meaning of the Fourteenth

25  Amendment.

26      Defendants argue that Plaintiff cannot show that any named

27  Defendant acted *deliberately* to deprive Plaintiff of life,

28  liberty, or property.  According to Defendants (apparently

1   relying on *Daniels*), deliberate state action, or specific intent

2   is required to sustain a due process claim under 42 U.S.C. §

3   1983.

4        Regarding Defendant Laguna, Defendants argue that

5   Plaintiffs averments fail to state that Laguna was aware of

6   Plaintiff's deadline and acted *purposefully* to deny him access to

7   the courts.  According to Defendants, Plaintiff did not allege

8   that Defendant Laguna actually participated in the February 22,

9   2005 conversation between Plaintiff and the librarian regarding

10  the filing deadline.  Plaintiff merely avers that Defendant

11  Laguna was present when the conversation took place.  Defendants

12  argue that this alone does not suffice to establish the requisite

13  knowledge base for a deliberate deprivation of constitutional

14  rights.

15       Defendants further contend that Plaintiff's Complaint is

16  not sufficiently clear to establish that the March 4, 2005 events

17  put Defendant Laguna on notice regarding Plaintiff's filing

18  deadline.  Defendants argue that during that encounter, Defendant

19  Laguna only confirmed that the copy machine was broken.

20  Defendant Laguna did not make a determination as to whether

21  Plaintiff had a filing deadline, nor did Plaintiff present

22  Defendant Laguna with any documentation detailing his filing

23  deadline.   Thus, according to Defendants, Plaintiff's averments

24  fail to establish that Defendant Laguna was aware of Plaintiff's

25  deadline and acted deliberately to prevent him from meeting it.

26  Since "[v]ague and conclusory allegations of official

27  participation in civil rights violations are not sufficient to

28  withstand a motion to dismiss," Defendants argue that the Court

1   should dismiss the complaint as it pertains to Defendant Laguna.

2   *Ivey*, 673 F.2d at 268 (9th Cir. 1982).

3        Regarding Defendant Seibel, Defendants argue that

4   Plaintiff's Complaint fails to establish that Defendant Seibel

5   had the requisite *mens rea* to effect a constitutional violation.

6   Defendants contend that Plaintiff's March 5, 2005 request for

7   emergency photocopies coupled with his voicing of concern

8   regarding the deadline did not sufficiently put Defendant Seibel

9   on notice regarding the deadline.  In fact, Defendants claim that

10  "nowhere in his allegations does Plaintiff ever demonstrate how

11  Lt. Seibel ever became aware of his court deadline."  According

12  to Defendants, Plaintiff could only have provided proper notice

13  of his deadline by displaying written proof of his emergency.

14  Defendants argue that without this proper notice, Plaintiff

15  cannot show that Defendant Seibel acted *intentionally* to deprive

16  Plaintiff of his right of access to the courts.  Defendants

17  further argue that Plaintiff's allegations do not even suffice to

18  establish negligence on Defendant Seibel's behalf and, as a

19  result, the Court should dismiss the 1983 claim for relief.

20       Defendants also contend that the complaints against

21  Defendants Armoskos, Clardy, and Melvin should be dismissed.

22  Plaintiff predicates their liability solely on his allegation

23  that they did not resolve his grievance in a satisfactory manner.

24  Yet prisoners are not constitutionally entitled to a specific

25  grievance procedure.  *See Ramirez v. Galaza*, 334 F.3d 850, 860

26  (9th Cir. 2003)("Ramirez's claimed loss of a liberty interest in

27  the processing of his appeals does not satisfy this standard,

28  because inmates lack a separate constitutional entitlement to a

1  specific grievance procedure."); *Buckley v. Barlow,* 997 F.2d 494,

2  497 (8th Cir. 1993)(holding that inmate grievance procedure is

3  not protected by Fourteenth Amendment and thus, failure to

4  process inmate's grievance does not give rise to section 1983

5  claim).

6      Thus, Defendants argue that Plaintiff did not have a

7  *constitutional* right to have his grievance considered, and as a

8  result, any failure by Armoskos, Clardy, and Melvin to adequately

9  process his grievance is not actionable under section 1983.

10 Therefore, the complaints against Defendants Armoskos, Clardy,

11 and Melvin should be dismissed.

12     Defendants further contend that, in general, none of the

13 conduct alleged by Plaintiff amounts to negligence, much less

14 intentional harm, requiring dismissal of the complaint.

15 Defendants read *Daniels*, *supra*, and *Davidson v. Cannon* 474 U.S.

16 at 347-48 as requiring Plaintiff to allege more than a mere

17 failure to exercise due care when asserting any section 1983

18 claim.  According to Defendants, they were at most negligent

19 under the facts alleged, and this negligence should not carry

20 section 1983 liability.

21 (2) Plaintiff's Opposition to Defendants' Motion to Dismiss

22     As discussed in the "Factual Allegations" section above,

23 Plaintiff counters that Defendant Laguna intentionally deprived

24 him access to the courts, thus alleging a sufficiently culpable

25 *mens rea* to satisfy the requirements posited by Defendants.

26 Plaintiff argues that he directed Defendant Laguna's attention to

27 forms documenting Plaintiff's impending court deadline that were

28 already on file with the law library.  According to Plaintiff,

1    this, coupled with the fact that Defendant Laguna was present for

2    a conversation between Plaintiff and the librarian, Mrs.

3    Peterson, regarding the filing deadline provided Defendant Laguna

4    with adequate notice of the deadline.  Plaintiff contends that,

5    in spite of this knowledge of the filing deadline, Defendant

6    Laguna purposefully and with "discriminatory intent," denied him

7    the needed photocopies.  Defendant Laguna further evidenced this

8    discriminatory intent by granting two other "similarly situated"

9    African-American inmates photocopies during the same library

10   session.

11   (3) Defendants' Reply to Plaintiff's Opposition to Defendants'

12   Motion to Dismiss

13        Defendants counter that Plaintiff's allegations are still

14   insufficient to establish a cognizable claim of denial of access

15   to the courts.  They assert that an Opposition to Defendants'

16   Motion to Dismiss is not the proper vehicle for Plaintiff to add

17   new allegations of culpable intent/motive on the behalf of

18   Defendant Laguna, and thus, the allegations must be excluded.

19   Plaintiff instead must seek leave of the Court to amend his

20   original complaint.  Defendants contend that without the

21   inclusion of this culpable *mens rea* Plaintiff has not stated a

22   cognizable claim of denial of access to the courts.

23   **D.  Plaintiff did not Sustain an Actual Injury**

24        Defendants argue that even if Defendants did deny Plaintiff

25   access to the courts, in violation of the Constitution, Plaintiff

26   cannot succeed in a §1983 claim because he did not suffer an

27   "actual injury" as a result of their denial.  *Lewis v. Casey* 518

28   U.S. 343, 348 (1996).  As cited by Defendants, the Supreme Court

1  defines "actual injury" in this context as "actual prejudice with
2  respect to contemplated or existing litigation."  *Id.*

3      In their Motion to Dismiss and to Strike, Defendants
4  concede that after Plaintiff was denied photocopies, he was
5  unable to file a timely Petition for Review.  As a result, on
6  March 14, 2005, the California Supreme Court denied the Petition
7  for Review.  However, on April 13, 2005, the California Supreme
8  Court denied a second Petition for Review, *on the merits and*
9  *without prejudice,* pending the outcome of other decisions.
10  Defendants argue that since the California Supreme Court reviewed
11  a second Petition for Review in the same case and denied it *on*
12  *the merits*, Plaintiff has not suffered an actual injury.  Even if
13  there was a denial of photocopies, it did not prevent Plaintiff
14  from having his arguments addressed by the California Supreme
15  Court.

16  **E.   No Nonfrivolous Underlying Cause of Action Asserted in**
**     Complaint**

17      Defendants contend that *Christopher v. Harbury*, 536 U.S.
18  403 (2002) requires plaintiffs asserting an access-to-courts
19  claim to allege (1) a nonfrivolous underlying cause of action,
20  adequately described in the complaint ("the foiled claim") and
21  (2) the actions by officials that caused the denial of access to
22  the courts.  *Christopher*, 536 U.S. at 415.  "[T]he underlying
23  cause of action, whether anticipated or lost, is an element that
24  must be described in the complaint, just as much as allegations
25  must describe the official acts frustrating the litigation."  *Id.*
26  As a result, the initial foiled claim must be described well
27  enough to apply the "nonfrivolous" test, and to show that the
28  "arguable" nature of the claim is "more than hope."  *Id*. at 416.

1    Defendants argue that Plaintiff failed to set forth the

2    nature of the appeal that was foiled by the prison officials'

3    actions.  As a result, the complaint should be dismissed for

4    failing to meet the standard set forth in *Christopher*.

5    **F.  Plaintiff's Prayer for Punitive Damages**

6    Defendants argue that Plaintiff's prayer for punitive

7    damages must be stricken.  A motion to strike pursuant to Fed. R.

8    Civ. P., Rule 12(f) may be used to strike a prayer for relief

9    when the damages sought are not recoverable as a matter of law.

10   *Tapley v. Lockwood Green Engineers, Inc.*, 502 F.2d 559, 560 (8th

11   Cir. 1974); *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479 n.34

12   (N.D. Cal. 1996).  Defendants contend that the allegations in

13   Plaintiff's Complaint do not suffice to establish a claim for

14   punitive damages.

15   Defendants concede that punitive damages may be awarded in

16   a 42 U.S.C. § 1983 action against a state official, in his

17   individual capacity.  *Smith v. Wade*, 461 U.S. 30 (1983).  Yet the

18   official's conduct must be "shown to be motivated by evil motive

19   or intent, or when it involves reckless or callous indifference

20   to the federally protected rights of others."  *Id*. at 56.  This

21   "threshold applies even when the underlying standard of liability

22   for compensatory damages is one of recklessness."  *Id*.

23   Defendants argue that Plaintiff has not met this threshold.

24   According to Defendants, Plaintiff has not sufficiently alleged

25   that any of the named Defendants acted with the "evil motive or

26   intent" or with the "reckless or callous indifference to the

27   federally protected rights of others" necessary to justify

28   Plaintiff's claim for punitive damages.  Defendants thus contend

1  that even if the action is allowed to proceed, Plaintiff's claim

2  for punitive damages should be stricken as a matter of law

3  because he has failed to allege any facts entitling him to

4  recover the damages.

IV.

**LEGAL STANDARDS**

7      A motion to dismiss for failure to state a claim, pursuant

8  to Federal Rule of Civil Procedure 12(b), tests the legal

9  sufficiency of the claims in the complaint.  A claim can be

10  dismissed only if it "appears beyond doubt that the plaintiff can

11  prove no set of facts in support of his claim that would entitle

12  him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957);

13  *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1974).  The court

14  must accept as true all material allegations in the complaint, as

15  well as reasonable inferences to be drawn from them, and must

16  construe the complaint in the light most favorable to the

17  plaintiff.  *See N.L. Industries, Inc. v. Kaplan*, 792 F.2d 896,

18  898 (9th Cir. 1986); *Parks School of Business, Inc. v. Symington*,

19  51 F.3d 1480, 1484 (9th Cir. 1995).  The court looks not at

20  whether the plaintiff will "ultimately prevail but whether the

21  claimant is entitled to offer evidence to support the claims."

22  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

23      A complaint "need not include evidentiary detail" but it

24  "must nonetheless allege a factual predicate concrete enough to

25  warrant further proceedings."  *United States ex rel Karvelas v.*

26  *Melrose-Wakefield Hospital*, 360 F.3d 220, 240 (1st Cri. 2004);

27  *citing DM Research, Inc. v. College of American Pathologists*, 170

28  F.3d 53 (1st Cir. 1999)(internal quotation marks and other

1    citations omitted).  "Bald assertions, subjective

2    characterizations, and legal conclusions" alone do not suffice to

3    "justify dragging a defendant past the pleading threshold."  *DM*

4    *Research, Inc.*, 170 F.3d at 55 (internal citations omitted).  As

5    a result, the 9th Circuit has stated that "a liberal

6    interpretation of a civil rights complaint may not supply

7    essential elements of the claim that were not initially pled.

8    Vague and conclusory allegations of official participation in

9    civil rights violations are not sufficient to withstand a motion

10   to dismiss."  *Bruns v. NCUA*, 122 F.3d 1252, 1257 (9th Cir. 1997);

11   *citing Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir.

12   1982).  Thus, even in the absence of a heightened pleading

13   requirement, Plaintiff must still propound sufficient factual

14   allegations to gain entitlement to proceed.

15         However, claims that a Plaintiff failed to exhaust his

16   administrative remedies prior to filing his Complaint are

17   addressed under a different legal standard.  Pursuant to *Wyatt v.*

18   *Terhune*, 315 F.3d 1108 (9th Cir. 2003), the proper vehicle for

19   challenging a prisoner's complaint for his failure to comply with

20   42 U.S.C. § 1997e(a)'s  exhaustion requirement is to file "an

21   unenumerated Rule 12(b) motion rather than a motion for summary

22   judgment."  *Wyatt*, 315 F.3d at 1119.  When addressing this

23   unenumerated 12(b) motion, the Court is not compelled to accept

24   all of Plaintiff's allegations as true.  "In deciding a motion to

25   dismiss for failure to exhaust nonjudicial remedies, the court

26   may look beyond the pleadings and decide disputed issues of

27   fact."  *Id*. at 1119-20.

28

1                                  **V.**

2                             <u>**DISCUSSION**</u>

3    **A.   Sovereign Immunity**

4        Generally, the Eleventh Amendment provides that states are

5    immune from "private damage actions brought in federal court."

6    *Henry v. County of Shasta*, 132 F.3d 512, 517 (9th Cir. 1997).  As

7    a result, actions against a state official acting in his official

8    capacity are also barred by the Eleventh Amendment.  *Regents of*

9    *the University of California v. Doe*, 519 U.S. 425, 429 (1997);

10   *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999).

11       However, this Eleventh Amendment immunity is not absolute

12   for state prison officials.[6]  State prison officials only receive

13   a *qualified* immunity.[7]  *Procunier v. Navarette*, 434 U.S. 555, 561

14   (1978). The *Scheuer* Court described the variable extent of the

15   qualified immunity:

16              [I]n varying scope, a qualified immunity is
                available to officers of the executive branch of the
17              government, the variation being dependant upon the
                scope of discretion and responsibilities of the
18              office and all the circumstances as they reasonably
                appeared at the time of the action on which
19              liability is sought to be based.  It is the
                existence of reasonable grounds for the belief
20              formed at the time and in light of all the
                circumstances, coupled with a good-faith belief,
21              that affords a basis for qualified immunity of
                executive officers for acts performed in the course
22              of official conduct.

23   *Scheuer* 416 U.S. at 247-48.

24   _____

25   [6]
     Only legislators, judges, and prosecutors receive absolute immunity when
26   acting in their official capacity.  *Tenney v. Brandhove*, 341 U.S. 367
     (1951); *Pierson v. Ray*, 386 U.S. 547 (1967); *Imbler v. Pachtman*, 424
27   U.S. 409 (1976).

     [7]
28   Similarly, this qualified immunity is afforded to governors and police
     officers.  *See, e.g. Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Pierson v.*
     *Ray*, 386 U.S. 547 (1967).

                                   22                        05cv1871

1    However, qualified immunity is *not* available if the

2  official "knew or reasonably should have known that the action he

3  took within his sphere of official responsibility would violate

4  the constitutional right of the [individual] affected, or if he

5  took the action with the malicious intention to cause a

6  deprivation of constitutional rights or other injury." *Wood v.*

7  *Strickland*, 420 U.S. 308 , 321 (1975).  Thus, under the rule

8  established in *Wood*, the qualified sovereign immunity defense

9  will not succeed if (1) "the constitutional right allegedly

10 infringed by them was clearly established at the time of their

11 challenged conduct" (2) Defendants knew or should have known of

12 the established constitutional right, and (3) Defendants knew or

13 should have known that their conduct violated the established

14 constitutional right.  *Procunier* 434 U.S. at 562.

15    The seminal case of *Bounds v. Smith*, 430 U.S. 817 (1977)

16 establishes that the fundamental constitutional right of access

17 to the courts includes the obligation of prison officials to

18 assist prisoners in filing meaningful legal papers, in order to

19 allow for meaningful court access.  *Bounds*, 430 U.S. at 828.  The

20 *Bounds* Court noted, in discussing the degree of assistance

21 required by the prison officials, that "it is indisputable that

22 indigent inmates must be provided at state expense with paper and

23 pen to draft legal documents, with notarial services to

24 authenticate them, and with stamps to mail them." *Id*. at 824-25.

25 The *Bounds* Court emphasized that, as it pertains to 42 U.S.C. §

26 1983 actions, this duty of prison officials is not to be taken

27 lightly, as "civil rights actions are of 'fundamental

28 importance...in our constitutional scheme' because they directly

protect our most valued rights." *Id*. at 826, *quoting Johnson v. Avery*, 393 U.S. 483, 485 (1969); *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974).  Affirmative assistance is necessary as the prisoner petitions "are the first line of defense against constitutional violations." *Bounds*, 430 U.S. at 828.

In recognition of the importance of meaningful prisoner access to the courts, the Ninth Circuit acknowledged the necessity of providing prisoners photocopies of their court documents. *Allen v. Sakai*, 40 F.3d 1001 (9th Cir. 1994).  In *Allen*, the prisoner alleged that he was denied meaningful access to the courts when prison officials refused to photocopy his court papers, despite his willingness to pay for the copies. *Id*. at 1005.  Since the prisoner was unable to file two additional copies along with his petition for post conviction relief, the Court returned the petition, unfiled. *Id.*

The *Allen* Court held that (1) it was established that prisoners had a constitutional right of meaningful access to the courts, (2) prison officials knew prisoners had this right (as established by *Bounds* several years prior), and (3) prison officials should have known that denying a prisoner photocopies deprives a prisoner of this right as, "it does not require sophisticated 'legal scholarship' to know that a plaintiff's access to the courts could be hindered seriously by an inability to make multiple, accurate photocopies of legal documents." *Id*. at 1005; *citing Ward v. County of San Diego*, 791 F.2d 1329, 1332 (9th Cir. 1986) *cert. denied* 483 U.S. 1020 (1987)(public officials not charged with "the kind of legal scholarship normally associated with law professors and academicians," but

1    with knowledge of a reasonable person). As a result, the state

2    officials in *Allen* did not receive qualified sovereign immunity.

3    *See also*, *Jones v. Franzen*, 697 F.2d 801 (7th Cir. 1983)(inmate

4    states valid claim against prison officials if he shows prison's

5    photocopy policy impeded court access); *Johnson v. Parke*, 642

6    F.2d 377, 380 (10th Cir. 1981)(denial of photocopies

7    unconstitutional to the extent it actually infringed upon

8    inmate's right of access to the courts).

9       As in *Allen*, Defendants here refused to copy Plaintiff's

10   court papers.  They knew Defendant was willing to pay for them,

11   as he had presented them with a CDC Form 193, an Inmate Trust

12   Withdrawal. (Complaint at 3).  Further, they knew of the filing

13   deadline.  The law library had documentation of the filing

14   deadline, Defendant Laguna was present for an earlier

15   conversation that Plaintiff had with the senior librarian

16   regarding the filing deadline, and Plaintiff explicitly told both

17   Defendant Laguna and Defendant Seibel of the filing deadline.

18       Since *Bounds* was decided in 1977, it is long established

19   that (1) Plaintiff has a constitutional right of access to the

20   courts.  Further, as acknowledged in *Allen*, (2) prison officials

21   are charged with knowledge of this right.  Finally, just as in

22   *Allen*, it (3) does not take "sophisticated legal scholarship" on

23   the behalf of the prison officials to realize that in denying

24   Plaintiff the photocopies necessary to file his Petition,

25   especially when he had an impending deadline, they prevented his

26   meaningful access to the courts.  Thus, Plaintiff's allegations,

27   if accepted as true, aver a sufficient factual predicate to

28   establish that Defendants should have known that their conduct

1   violated a known, established, constitutional right. As a result,

2   Defendants are not entitled to sovereign immunity.  In addition,

3   specifically regarding Defendant Laguna, Plaintiff further

4   alleged that he acted intentionally to deny Plaintiff his

5   constitutional right of access to the courts.  The Court must

6   likewise accept this allegation as true.  Thus, this court

7   recommends that Defendants' Motion to Dismiss, on the grounds

8   that all Defendants are entitled to sovereign immunity, be

9   **DENIED.**

10  **B.  Rule of Exhaustion**

11          The rule requiring a prisoner to exhaust administrative

12  remedies before filing suit is set forth in 42 U.S.C. § 1997e(a):

13          No action shall be brought with respect to prison
            conditions under section 1983 of this title, or any
14          other Federal law, by a prisoner confined in any
            jail, prison, or other correctional facility until
15          such administrative remedies as are available are
            exhausted.

16

17  Compliance with § 1997e(a) is mandatory:

18          Once within the discretion of the district court,
            exhausting in cases covered by § 19973e(a) is now
19          mandatory.  *Booth v. Churner*, 532 U.S. 731, 739
            (2001).  All "available" remedies must now be
20          exhausted; those remedies need not meet federal
            standards, nor must they be "plain, speedy, and
21          effective..." [W]e hold that the PLRA's exhaustion
            requirement applies to all inmate suits brought
22          about prison life, whether they involve general
            circumstances or particular episodes, and whether
23          they allege excessive force or some other wrong.

24  *Peter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Bennett v.*

25  *King*, 293 F.3d 1096, 1098 (9th Cir. 2002); *McKinney v. Carey*, 311

26  F.3d 1198, 1199 (9th Cir. 2002).

27          The Court does not have discretion to dispense with this

28  administrative exhaustion requirement.  *Booth*, 532 U.S. at 739.

1   The Supreme Court has "stress[ed] the point...that [it] will not

2   read futility or other exceptions into statutory exhaustion

3   requirements where Congress has provided otherwise." *Id.* at 741

4   n.6.   Congress enacted the PLRA "to curtail frivolous prisoners'

5   suits and to minimize the costs - which are borne by taxpayers -

6   associated with those suits." *Madrid v. Gomez*, 190 F. 3d 990,

7   996 (9th Cir. 1999).  As a result, prisoners must exhaust

8   administrative remedies prior to filing suit, *regardless of the*

9   *ultimate remedy sought.  Booth*, 532 U.S. at 740; *see also Terrell*

10  *v. Brewer*, 935 F.2d 1015, 1018-19 (9th Cir. 1990)(dismissing

11  entire action where *Bivens* plaintiff failed to exhaust injunctive

12  claim in suit also seeking damages)

13      Defendants contend that the Court should dismiss

14  Plaintiff's Complaint because he did not exhaust the four step

15  review process provided by Title 15 of Cal. Code Regs. § 3084.5.

16  prior to filing suit.  In positing this argument, Defendants

17  emphasize that Plaintiff merely flatly asserted compliance with

18  the exhaustion requirement without providing any evidence of this

19  exhaustion.

20      Normally, when addressing a 12(b)(6) motion to dismiss,

21  this court must accept such material allegations by a Plaintiff

22  as true.  *See N.L. Industries, Inc. v. Kaplan*, 792 F.2d 896, 898

23  (9th Cir. 1986); *Parks School of Business, Inc. v. Symington*, 51

24  F.3d 1480, 1484 (9th Cir. 1995).  However, when specifically

25  addressing the 42 U.S.C. § 1997e(a) exhaustion requirement,

26  pursuant to a non-enumerated 12(b) motion, this Court may look

27  beyond the pleadings and decide disputed issues of fact.  *Wyatt*

28  *v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003).

05cv1871

1        Yet even though this Court may look beyond the pleadings

2   and address factual disputes, Plaintiff still does not have the

3   burden of providing conclusive evidence of exhaustion. When

4   alleging failure to exhaust, "defendants have the burden of

5   raising and proving the absence of exhaustion." *Wyatt*, 315 F.3d

6   at 1119.  Defendants must prove that relief remained available,

7   either at unexhausted levels of the grievance process or through

8   awaiting the results of relief already granted. *Brown v. Valoff*,

9   422 F.3d 926, 936-37 (9th Cir. 2005).  Defendants have not

10  provided sufficient proof that relief remained available.

11       Defendants did provide statements of prison officials J.T.

12  Stovall and N. Grannis, as recommended in *Brown,* alleging

13  Plaintiff's failure to exhaust.  *Brown*, 422 F.3d at 937.

14  According to these statements, Plaintiff never advanced inmate

15  appeal RJD-05-465 to the Third, or Director's Level of Review.

16  Thus, they contend, relief remained available.

17       42 U.S.C. § 1997e(a) clearly requires full exhaustion of

18  the administrative process prior to filing suit.  In the

19  California prison system, this will normally require appeal to

20  the Third, or Director's Level of Review.  Yet this is not always

21  the case.  A Plaintiff need not continue, for example, when it is

22  certain that further appeals will not produce any corrective

23  action by the prison officials.  *Brown*, 422 F.3d at 936.

24       Once the prison system has provided a remedy for an issue

25  raised in an inmate appeal, prison officials, in the interest of

26  conserving resources, will likely cease any further

27  investigations into that particular issue.  *Id.*  Further appeal,

28  at this point, would prove pointless and futile, and certainly

1    would not produce any additional corrective action.  *Id*.  "Once

2    an agency has granted some relief and explained that no other

3    relief is available, "the administrative process has not been

4    obstructed.  It has been exhausted."  *Id., citing Jasch v.*

5    *Potter*, 302 F.3d 1092, 1096 (9th Cir. 2002).

6         In *Brown*, for example, the petitioner's appeal was

7    partially granted at the Second Level of Review.  *Id*. at 937.

8    The partial grant stated, in pertinent part: "Your appeal is

9    partially granted at the second level of review, in that your

10   appeal will be investigated by the Office of Internal Affairs, at

11   which time you will be personally interviewed."  *Id*.  The court

12   weighed heavily the wording of this partial grant in holding that

13   the complaint process was exhausted for the purpose of

14   §1997e(a).  The wording of the partial grant suggested "that no

15   further relief would be available through the appeals process."

16   *Id*.  After Brown received this partial grant, it would have been

17   pointless and illogical for him to have pursued any further

18   appeals regarding this particular issue.

19        Plaintiff's administrative appeal, RJD-05-465[8], was

20   likewise partially granted at the First Formal Level of Review.

21   Thus, the content of the memoranda accompanying this grant

22   becomes crucial.  If the partial grant was worded in a manner

23   _____

[8]

24   In inmate appeal RJD-05-465, Plaintiff complained that on March 4, 2005,
     he presented a petition for emergency photocopies to Defendant Laguna at
25   the law library.  Even though Plaintiff had an impending March 6, 2005
     deadline for the court documents he needed to be copied, Defendant Laguna
     failed to provide Plaintiff with the requested photocopies. Defendant
26   Laguna stated that he was not competent to assess the validity of
     Plaintiff's alleged March 6, 2005 deadline.  This appeal, relating to
27   court access, was denied at the Informal Level of Review, partially
     granted at the First Formal Level of Review, and denied at the Second
     Formal Level of Review.  According to the declarations of prison
28   administrators, this appeal was never advanced to the Third, or Director's
     Level of Review. (Decl. Of Stovall at 3; *see also*, Decl. Of Grannis at 3).

1    similar to that in *Brown*, then any further appeal of the issue

2    that was granted (and presumably remedied) would prove futile as

3    it certainly would not produce any corrective action beyond that

4    already granted.  In such an instance, Plaintiff would have

5    exhausted the appeals process (as it pertains to that particular

6    issue) for the purposes of § 1997e(a).

7         Defendants do not supply the content of the memorandum

8    accompanying this grant. They merely assert that it related to

9    library access and that Plaintiff ultimately proceeded to the

10   second level of review, ceasing his appeals following a denial at

11   that level.  They contend that this evidences a failure to

12   exhaust the appeals process.

13        Plaintiff did proceed to the Second Level of Review, but

14   this does not, as Defendants argue, lead to the natural and

15   automatic conclusion that Plaintiff failed to exhaust his denial-

16   of-access claims.  Without further information, the Court does

17   not know if Plaintiff was pursuing the same issue that was

18   granted relief at the First Formal Level (which is illogical and

19   unlikely as he had already triumphed on that particular element

20   of the claim), or was pursuing one or all of the other, distinct

21   elements of appeal RJD-05-465 that were denied at the First

22   Formal Level (which is a more likely scenario).

23        As a result, the minimal evidence presented does not

24   effectively refute the possibility that Plaintiff's denial-of-

25   access claim was partially granted, and thus exhausted, at the

26   First Level of Review.  Plaintiff could merely have been pursuing

27   separate, unrelated elements of RJD-05-465 at the Second Level of

28   Review.  Therefore, the Court must find the exhaustion

1  requirement, as it pertains to Plaintiff's access to the courts

2  claim, satisfied by appeal RJD-05-465.

3      As a result, the Court need not consider inmate appeal RJD-

4  04-1037, first mentioned in Plaintiff's Opposition to Defendants'

5  Motion to Dismiss, when analyzing Defendants' Motion to Dismiss.

6  Defendants correctly contend that appeal RJD-04-1037, in and of

7  itself, would not suffice to satisfy the exhaustion requirement.

8  Plaintiff generated the appeal *prior to* the alleged injury.

9  Absent flawless and supernatural prognostication, Plaintiff could

10  not possibly have described the events in inmate appeal RJD-04-

11  1037 that caused his alleged injury.  Further, the events that

12  are described in appeal RJD-04-1037 are wholly unrelated to the

13  issues raised in Plaintiff's complaint and involve entirely

14  different parties. "Trust account fraud," confidentiality, and

15  lack of canteen have nothing to do with a denial of photocopies.

16  To allow an appeal that was already pending at the time of

17  injury, and that contained unrelated factual allegations, would

18  completely defeat the purpose of the exhaustion requirement.

19  Prison administrators cannot remedy problems of which they are

20  not aware.

21      Yet even ignoring this stale, unrelated appeal (RJD-04-

22  1037), Plaintiff's claim that he exhausted his administrative

23  remedies through inmate appeal RJD-05-465 has not been

24  effectively rebutted.  As a result, this court recommends that

25  Defendants' Motion to Dismiss, on the grounds that Plaintiff did

26  not exhaust his administrative remedies prior to filing suit, be

27  **DENIED**.

28  **C.  Failure to State a Claim**

1   Defendants rely largely on *Daniels v. Williams*, 474 U.S.

2   327 (1986) in arguing that Plaintiff failed to state a claim upon

3   which relief could be grounded.  They insist that, pursuant to

4   *Daniels*, Plaintiff must show that Defendants acted *deliberately*

5   to deprive him of life, liberty, or property if he is to sustain

6   a claim under 42 U.S.C. § 1983.  This argument however, misreads

7   the holding in *Daniels* and attempts to insert a *mens rea*

8   requirement into 42 U.S.C. § 1983.

9   In fact, *Daniels* itself acknowledges that 42 U.S.C. §1983

10   does *not* have an express *mens rea* requirement.  In *Daniels*, the

11   Supreme Court adhered to its earlier conclusion that §1983

12   "contains no state-of-mind requirement independent of that

13   necessary to state a violation of the underlying constitutional

14   right." *Daniels*, 474 U.S. at 330.  A §1983 Plaintiff must simply

15   show a violation of a constitutional right.  *Id.*  The claim

16   arises at the moment a state official violates the Constitution.

17   *Id.*  Sometimes this will require more than a showing of

18   negligence (as in personal injury cases like *Daniels*), other

19   times it will not (as in an access-to-courts case).  It depends

20   entirely on the right that is alleged to have been violated.  *Id.*

21   "[T]he plaintiff must still prove a violation of the underlying

22   constitutional right; and *depending on the right*, mere negligent

23   conduct may not be enough to state a claim."  *Id.* (emphasis

24   added).

25   *Daniels* is distinct from Plaintiff's case.  The two cases

26   involve alleged violations of *very different constitutional*

27   *rights.*  *Daniels* involved the Due Process Clause, Plaintiff's

28   Complaint pertains to the fundamental right of access to the

1   courts.

2       In *Daniels*, the prisoner slipped on a pillow negligently

3   left in a staircase by a correctional deputy.  *Id*. at 328.  The

4   prisoner fell, injured himself, and sought to recover damages

5   under 42 U.S.C. § 1983.  *Id*.  The prisoner argued that the

6   correctional deputy's negligence deprived the prisoner of his

7   liberty interest in being free from bodily injury.  *Id*.

8       The Supreme Court held that this personal injury, resulting

9   from the correctional deputy's negligence, does not implicate the

10   Due Process clause.  *Id*. at 328.  The Due Process clause was

11   intended to secure the individual from the arbitrary exercise of

12   the powers of government."  *Id*. at 331; *quoting Hurtado v.*

13   *California*, 110 U.S. 516, 527(1884).  A lack of due care,

14   resulting in an unfortunate injury, does not involve an abuse of

15   government power.  Only when an individual is physically injured

16   by a state actor's deliberate (or possibly, reckless) conduct is

17   there a concern that a government position of power is being

18   abused.  A negligent accident simply does not give rise to a

19   constitutional violation.  "Our Constitution deals with the large

20   concerns of the governors and the governed, but it does not

21   purport to supplant traditional tort law in laying down rules of

22   conduct to regulate liability for injuries that attend living

23   together in society."  *Id. at* 332.

24       Plaintiff's Complaint does not allege a physical injury, as

25   a result of government official's action, that could potentially

26   implicate the Due Process Clause.  Plaintiff asserts a distinct

27   and separate constitutional violation.  Plaintiff alleges that

28   Defendants abused their power by denying him access to the

1    courts, a fundamental right protected by the Constitution.

2         Regardless of the *mens rea* or motive of the state official,

3    any deprivation of meaningful access to the courts violates the

4    Constitution - provided an actual injury results.  *Bounds*, 430

5    U.S. at 828.  This right of access is fundamental.  *Id*.  The

6    Plaintiff does not need to show intent.  When the Ninth Circuit

7    examines a denial of access case for failure to state a claim, it

8    (1) determines whether the claim specifically alleges inadequate

9    law libraries or access to legal knowledge.  If the claim does

10   not involve such a specific allegation the Court then (2)

11   determines whether an actual injury resulted from a denial of

12   access.  *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989).  At

13   no point in the analysis does the Court determine whether the

14   prison official acted deliberately, intentionally, or even

15   recklessly.

16        Imposing Defendants' *mens rea* requirements on denial-of-

17   access cases would undermine and derogate the fundamental right

18   of access to the courts by preventing most valid suits.  *Bounds*,

19   for example, the seminal denial of access case that cemented the

20   right of meaningful access to the courts, would have instead died

21   in the pleading stages.  In *Bounds*, initially a 42 U.S.C. § 1983

22   action, the State did provide the prisoners with legal research

23   facilities.[9]  The State thus made a proactive effort to aid

24

25   [9]    The State initially provided one solitary library for prisoner
      research.  This was deemed "severely inadequate" by the district
26   court.  In response, the State proposed a plan establishing seven
      libraries across the State and smaller libraries in the women's
27   facilities.  Each library would keep a collection of lawbooks,
      provide typewriters, allow use of copy machines, and train inmates
      as research assistants and typists to aid fellow prisoners.  Even in
28   light of this affirmative State effort to provide access, the plan
      was still deemed unconstitutional as the women did not receive equal
      access.  *Bounds*, 430 U.S. at 818-19.

1   prisoner access.  Given this proactive effort, one could not

2   realistically claim that State officials *deliberately* deprived

3   prisoners of any meaningful access to the courts.  Yet even given

4   this lack of culpable intent, the Court still deemed the

5   facilities provided constitutionally inadequate.

6       Thus, the degree of culpable *mens rea* that a potential

7   §1983 Plaintiff must establish is entirely dependent on the

8   constitutional right involved.  The Supreme Court has yet to

9   require that a denial-of-access be deliberate to be actionable.

10  As discussed earlier, *Daniels* did not involve a deprivation of

11  meaningful access.  *Daniels* involved a physical injury that was

12  allegedly cause by government action.  As a result, *Daniels* is

13  not controlling precedent for denial-of-access claims.  Neither

14  the Supreme Court nor Ninth Circuit have appended a *mens rea*

15  requirement to their denial-of-access criteria.

16      The Court notes that in Plaintiff's Opposition to

17  Defendant's Motion to Dismiss, Plaintiff did allege that

18  Defendant Laguna *intentionally* denied him the requested

19  photocopies.  Yet, as Defendants correctly indicate in their

20  Reply to Defendant's Opposition, a Plaintiff seeking to propound

21  new factual allegations must usually seek leave of the court to

22  amend the original complaint.  As the 7th Circuit stated: "It is

23  axiomatic that the complaint may not be amended by the briefs in

24  opposition to a motion to dismiss."  *Car Carriers, Inc. v. Ford*

25  *Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).[10]  Thus, this Court

26

27  [10]    This axiom while widely accepted, is not absolute. Some courts, when
        faced with "special circumstances," have treated opposition briefs
        as *de facto* amendments or supplements to the complaint's
28      allegations.  *See, e.g. Elias Bros. Restaurants, Inc. v. Acorn*
        *Enters., Inc.*, 831 F.Supp. 920, 922 n.3 (D.Mass. 1993); *Buccino v.*
        *Continental Assurance Co.*, 578 F.Supp. 1518, 1524 n. 5 (S.D.N.Y.

1  will base its decision regarding Defendants' Motion to Dismiss

2  solely on the factual allegations raised in the original

3  complaint.

4       Unlike an un-enumerated 12(b) motion to dismiss (used when

5  specifically alleging that 42 U.S.C. § 1997e(a)'s exhaustion

6  requirement has not been satisfied), for the purposes of a

7  12(b)(6) motion to dismiss this Court must accept the material

8  allegations contained in Plaintiff's initial Complaint as true.

9  According to this Complaint, both Defendant Laguna and Defendant

10 Seibel knew Plaintiff needed photocopies for an impending court

11 deadline.  Defendant Laguna initially received notice of the

12 deadline from a February 22, 2005 conversation at which Defendant

13 Laguna was present.  Defendant Laguna was also notified of the

14 deadline on March 4, 2005 when Plaintiff sought photocopies of

15 the Petition for Review.  According to Plaintiff, Defendant

16 Laguna insisted that Plaintiff did not have a filing deadline.

17 Thus, it is reasonable to infer that a conversation took place,

18 between Plaintiff and Defendant Laguna, regarding the possibility

19 of an impending filing deadline.  As a result, Defendant Laguna

20 cannot rightly claim that he did not know that his actions at

21 least risked denying Plaintiff access to the courts.

22       According to the Complaint, Defendant Seibel also had

23 notice of the filing deadline.  Plaintiff served him with a form

24 requesting emergency copies.  The service of this form notified

25

26       1983).  Pursuant to the Supreme Court's admonition that courts
   should construe the allegations of a *pro se* plaintiff, "however
   inartfully pleaded," liberally, this court could possibly find that
27 the "special circumstances" posed by Plaintiff's incarceration,
   coupled with his alleged difficulty in accessing the courts, justify
28 treating his opposition brief as a *de facto* amendment or supplement
   to the original complaint.  *Haines v. Kerner*, 404 U.S. 519, 520
   (1972).

1   Defendant Seibel of the impending deadline.  Defendant  Seibel

2   even asked for a court order to verify the deadline.   Thus,

3   Defendant Seibel cannot rightly claim that he did not have any

4   notice of the impending deadline.  He also cannot claim that he

5   was not aware that his actions risked depriving Plaintiff of

6   access to the courts.

7        Yet even though both Defendants were on notice regarding

8   the filing deadline, they denied Plaintiff the photocopies,

9   ultimately causing him to miss the deadline.  This denied

10  Plaintiff meaningful access to the courts in a manner recognized

11  by *Allen*, 40 F.3d at 1005.  As explained above, Plaintiff did not

12  need to establish that the Defendants acted deliberately.  Under

13  *Sands*, Plaintiff is only required to establish that Defendants

14  actions deprived him meaningful access to the courts and that he

15  was actually injured.  Thus, as it pertains to Defendants Laguna

16  and Seibel, Plaintiff has stated a claim upon which relief can be

17  granted.

18        Regarding Defendants Clardy, Melvin, and Armoskos, however,

19  Plaintiff merely alleges that these appeal reviewers "acquiesced

20  Laguna's action." (Complaint at 4 of 9).  The Court construes

21  this language as a complaint that they did not resolve

22  Plaintiff's grievance in a satisfactory manner.  Such a complaint

23  does not state a claim upon which relief can be granted as "bald

24  assertions, subjective characterizations, and legal conclusions"

25  alone do not suffice to "justify dragging a defendant past the

26  pleading threshold."  *DM Research, Inc.*, 170 F.3d at 55 (internal

27  citations omitted).  Plaintiff's allegations as they pertain to

28  Defendants Clardy, Melvin, and Armoskos are "vague and conclusory

allegations of official participation in civil rights
violations." *Bruns v. NCUA*, 122 F.3d 1252, 1257 (9th Cir. 1997);
*citing Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir.
1982). These vague and conclusory allegations "are not
sufficient to withstand a motion to dismiss." *Id*.

Further, in the Ninth Circuit, inmates are not entitled to
a "specific prison grievance procedure." *Ramirez*, 334 F.3d at
860. As a result, the Defendants' unsatisfactory handling of
Plaintiff's grievance, without more, cannot constitute a
constitutional violation. There is a clear distinction between a
constitutional denial-of-access perpetrated by one officer and a
general complaint regarding the process by which grievances are
handled - a process that is not constitutionally mandated.
Without a specific constitutional violation, Defendants cannot be
liable under 42 U.S.C. § 1983. Thus, as it pertains to
Defendants Clardy, Melvin, and Armoskos, Plaintiff has not stated
a claim upon which relief can be granted.

This Court thus recommends that Defendants' Motion to
Dismiss, as it pertains to Defendants Laguna and Seibel, be
**DENIED** as Plaintiff has stated a claim upon which relief can be
granted. This Court further recommends that Defendants' Motion
to Dismiss, as it pertains to Defendants Clardy, Melvin, and
Armoskos be **GRANTED** as Plaintiff has failed to state an
actionable claim.

**D. Plaintiff Did Not Sustain an Actual Injury**

Pursuant to the standard enunciated in *Sands*, 886 F.2d at
1171, Plaintiff must have suffered an *actual injury* as a result
of his denial of access to pursue a 42 U.S.C. § 1983 action

1   (unless Plaintiff alleges inadequate law libraries or inadequate

2   access to legal knowledge).

3        On March 14, 2005, the California Supreme Court denied

4   Plaintiff's first Petition for Review as untimely.  On April 13,

5   2005, the California Supreme Court denied a second Petition for

6   Review *on the merits* and *without prejudice*.

7        Defendants argue that since the Supreme Court denied the

8   second Petition for Review *on the merits*, Plaintiff did not

9   suffer an actual injury.  Even though he was denied adequate

10  photocopies and thus missed the deadline for his first Petition

11  for Review, Plaintiff still had his day in court when the

12  California Supreme Court addressed the merits of his second

13  Petition for Review.

14       However, this argument hinges on the assumption that the

15  same issues were raised in the first (denied as untimely)

16  Petition for Review and second Petition for Review.  Defendants

17  have not provided any such proof.[11]  If Plaintiff raised different

18  claims in each Petition for Review, then the foreclosure of his

19  first set of claims constitutes an actual injury.  In such a

20  situation, Plaintiff would have been denied his day in court, as

21  it pertains to those particular claims, by the actions of state

22  officials.

23       As a result, this Court recommends that Defendants Motion

24  to Dismiss, on the grounds that Plaintiff did not sustain an

25  _____

[11]

26  The entirety of the opinion reads: "Petition for review denied without
    prejudice to any relief to which defendant might be entitled after this
27  court determines in *People v. Black*, S126182, and *People v. Towne*,
    S125677, the effect of *Blakely v. Washington* (2004) __U.S.__, 124 S.Ct.
28  2531, on California law."  *People v. Ruiz*, S131852 (2005).  As a result,
    the Court is unable to ascertain which claims were denied on the merits.

1    actual injury, be **DENIED**.

2    **E.  No Nonfrivolous Underlying Cause of Action Asserted in
     Complaint**

3

4        *Christopher v. Harbury*, 536 U.S. 403 (2002) requires

5    plaintiffs asserting an access-to-courts claim to allege: (1) the

6    underlying cause of action, adequately described in the

7    complaint, that was foiled by the state officials; and (2) the

8    actions by officials that caused the denial of access to the

9    courts.  *Id.* at 415.

10       Plaintiff has not provided any details regarding the claim

11   that was foiled by his denial of access to the courts.  Without

12   an adequate description of the claim, this Court cannot determine

13   whether or not the claim was frivolous.  Nor can this Court

14   determine whether the "arguable" nature of the underlying claim

15   was "more than hope" as required by *Christopher*.  *Id.* at 416.

16       As a result, this Court recommends that Defendants' Motion

17   to Dismiss on the grounds that Plaintiff failed to assert a non-

18   frivolous underlying cause of action be **GRANTED, WITH LEAVE TO**

19   **AMEND**.

20   **F.  Plaintiff's Prayer for Punitive Damages**

21       Punitive damages may be awarded against a state official in

22   his individual capacity (under 42 U.S.C. § 1983) when the

23   official's "conduct is shown to be motivated by evil motive or

24   intent, or when it involves reckless or callous indifference to

25   the federally protected rights of others."  *Smith v. Wade*, 461

26   U.S. 30, 56 (1983).  This heightened threshold applies "even when

27   the underlying standard of liability for compensatory damages is

28   one of recklessness."  *Id.*

1    Defendants claim that nothing in Plaintiff's Complaint

2   shows that the state officials acted with "evil motive or intent"

3   or with "reckless or callous indifference to the federally

4   protected rights of others" as required by *Smith v. Wade*.  Yet

5   Plaintiff alleges that both Defendants Seibel and Laguna knew of

6   his filing deadline and still refused to make photocopies for

7   him.  The right of meaningful access to the courts is fundamental

8   and well established.  *See Bounds*, 430 U.S. 817 (1977).  The

9   Ninth Circuit has acknowledged that photocopies are necessary for

10  meaningful access.  *Allen*, 40 F.3d 1001.

11    Thus, from the pleadings it is certainly possible that

12  Defendants Laguna and Seibel were acting with evil intent or

13  reckless or callous indifference to Plaintiff's constitutional

14  rights.  A direct refusal to affirmatively assist Plaintiff, in

15  light of their knowledge regarding the deadline could possibly

16  constitute "reckless or callous indifference."  Yet while a

17  distinct possibility, based on the pleadings alone, this Court

18  cannot conclusively determine that Defendants acted recklessly or

19  callously.  As a result, this Court recommends that Defendants'

20  Motion to Strike, on the grounds that Plaintiff's Prayer for

21  Punitive Damages must be stricken, be **GRANTED, WITH LEAVE TO**

22  **AMEND**

23

24

25                              **VI.**

26                          **CONCLUSION**

27    For the reasons discussed above, it is recommended that the

28  Court:

1.   **DENY** Defendants' Motion to Dismiss on the grounds that Defendants are entitled to sovereign immunity where they are sued in their official capacity.

2.   **DENY** Defendants' Motion to Dismiss on the grounds that Plaintiff failed to exhaust his administrative remedies.

3.   a. **DENY** Defendants' Motion to Dismiss for failure to state a claim as it pertains to Defendants Laguna and Seibel.

   b. **GRANT** Defendants' Motion to Dismiss for failure to state a claim as it pertains to Defendants Armoskos, Clardy, and Melvin.

4.   **DENY** Defendants' Motion to Dismiss on the grounds that Plaintiff cannot establish that he suffered actual injury as a result of Defendants' conduct.

5.   **GRANT, WITH LEAVE TO AMEND** Defendants' Motion to Dismiss on the grounds that Plaintiff failed to assert a non-frivolous underlying claim.

6.   **DENY** Defendants' Motion to Strike Plaintiff's prayer for punitive damages.

Additionally it is recommended that Plaintiff be granted leave to amend his Complaint to address the deficiencies set forth in this Report and Recommendation.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than <u>January 31, 2007</u>, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be

05cv1871

1  captioned "Objections to Report and Recommendation."

2      **IT IS FURTHER ORDERED** that any reply to the objections

3  shall be filed with the Court and served on all parties no later

4  than <u>February 12, 2007</u>. The parties are advised that failure to

5  file objections within the specified time may waive the right to

6  raise those objections on appeal of the Court's order.  <u>See</u>

7  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v.</u>

8  <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9      **IT IS SO ORDERED.**

10

11  DATED:  January 10, 2007

12

13  _____

14                                  Hon. Leo S. Papas
                                    U.S. Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

43                                                    05cv1871

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

05cv1871