1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDAL RUIZ,<br><br>                                  Plaintiff,<br><br>            vs.<br><br>J. LAGUNA, et. al.,<br><br>                                  Defendants. | CASE NO. 05CV1871WQH<br><br>ORDER |

HAYES, Judge:

The matters pending before the Court are: (1) Defendants' Motion to Dismiss Plaintiff's Complaint and to Strike (Doc. #12); (2) the review of the Report and Recommendations of the United States Magistrate Judge filed on January 10, 2007 (Doc. #34); and (3) Plaintiff's application for an order enjoining prison officials (Doc. #35).

## BACKGROUND

On September 28, 2005, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 alleging that the actions of the Defendants deprived him of his right of access to the courts. (Complaint at 3). Plaintiff sued all Defendants as an individual and in his official capacity. (Complaint at 2).

Plaintiff alleges in the Complaint that he is incarcerated at R. J. Donovan Correctional Facility; that he presented his Petition for Review, exhibits, and a complaint to Defendant Laguna for photocopying on March 4, 2005; and that Defendant Laguna denied him the

photocopies.  The Complaint alleges that the law library clerk informed Plaintiff that the copy machine was broken and the library could only photocopy documents for inmates with verifiable court deadlines; that he needed the copies immediately for a March 6, 2005 filing deadline for his Petition for Review to the California Supreme Court; and that Defendant Laguna already knew of this filing deadline.  The Complaint alleges that Defendant Laguna was present on February 22, 2005 when Plaintiff discussed the filing deadline with the senior librarian and that Plaintiff reminded Defendant Laguna of the filing deadline after Laguna denied the photocopies.  The Complaint alleges that Defendant Laguna insisted that Plaintiff did not have an impending deadline and denied Plaintiff the photocopies.  (Complaint at 3).

The Complaint alleges that Plaintiff served a CDC602 on Defendant Seibel on March 5, 2005, requesting emergency photocopies and that Defendant Seibel requested Plaintiff's court order so as to verify the emergency.  (Complaint at 3).  The Complaint alleges that Plaintiff returned to his cell to retrieve his papers, but was required to stay in his cell due to a "modified program" and could not present the court order to Defendant Seibel.  (Complaint at 3-4).  The Complaint alleges that Defendants Clardy, Melvin, and Armoskos also contributed to the circumstances by not adequately resolving Plaintiff's grievance.  (Complaint at 4).  The Complaint alleges that without the requisite photocopies, Plaintiff could not meet the March 6, 2005 filing deadline set for his Petition for Review; that he filed a Motion Seeking Permission to File a Late Petition; and that on March 25, 2005 the California Supreme Court denied this motion.  (Complaint at 4).[1]

On April 7, 2006, Defendants filed a Motion to Dismiss the Complaint and a Motion to Strike pursuant to Federal Rules of Civil Procedure 12(b) and 12(b)(6).  Defendants contend that the Court should dismiss Plaintiff's Complaint on the grounds that (1) all named Defendants are entitled to sovereign immunity when sued in their official capacity, (2) Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a), (3) the Complaint failed to state a claim upon which relief can be granted, and (4) Plaintiff cannot

---

[1]The Complaint contains other allegations of acts which are not included because they do not relate to any constitutional injury.

establish that he suffered any actual injury as a result of Defendants' conduct.

On June 1, 2006, Defendants filed a Request for Judicial Notice of a conformed copy of the April 13, 2005 ruling of the California Supreme Court in S131852 denying Plaintiff's Petition for Review without prejudice along with a Supplemental Brief in support of Defendants' Motion to Dismiss. Defendants asserted that the ruling of the California Supreme Court in S131852 clearly shows that Plaintiff's Petition for Review was denied on the merits and without prejudice and that Plaintiff can show no injury to his ability to pursue his remedies in the state court. (Doc # 18).

On June 13, 2006, the Court granted Plaintiff's Emergency Motion for Extension of Time and allowed Plaintiff to file a late Opposition to Defendant's Motion to Dismiss. (Doc. #21).

On July 31, 2006, Plaintiff filed an Opposition to Defendants' Motion to Dismiss the Complaint, asserting that (1) he need not submit evidence and affidavits in support of his Complaint, (2) Defendant Laguna knew of Plaintiff's March 6, 2005 filing deadline for his Petition for Review and intentionally denied Plaintiff the necessary photocopies, and (3) he exhausted his administrative remedies prior to filing the Complaint. (Doc. # 27).

On August 8, 2006 Defendants filed a Reply to Plaintiff's Opposition to the Motion To Dismiss the Complaint asserting that Plaintiff cannot use an inmate appeal which pre-dated the alleged injury to satisfy the exhaustion requirement, and that Plaintiff cannot add new allegations to his original Complaint through his opposition brief. (Doc. # 29).

On January 10, 2007, the Magistrate Judge filed a Report and Recommendation recommending that Defendants' Motion to Dismiss and to Strike should be granted in part and denied in part. The Report and Recommendation concluded that 1) Defendants were not entitled to dismissal in their official capacity on the grounds of sovereign immunity; 2) Defendants did not provide sufficient proof that administrative relief remained available; and 3) Plaintiff adequately alleged a denial of access claim against Defendants Laguna and Seibel but not against Defendants Clardy, Armoskos, and Melvin.

The Report and Recommendation found that there was evidence in the record of two

inmate appeals filed by the Plaintiff: 1) inmate appeal RJD 04-1037 and 2) inmate appeal RJD 05-465.  The Report and Recommendation concluded that inmate appeal RJD 04-1037 cannot satisfy the statutory requirement that Plaintiff exhaust his administrative appeal rights prior to filing an action under § 1983 because inmate appeal RJD 04-1037 was filed prior to the actions which are the subject of the Complaint, describe events that are unrelated to the issues raised in the Complaint, and involve different parties unrelated to the actions raised in the Complaint. The Report and Recommendation further concluded that the record was not sufficient to determine whether Plaintiff exhausted his administrative appeal rights in inmate appeal RJD 05-465 prior to filing this action under § 1983 because the evidence provided in the record did not explain the partial grant at the First Formal Level of Review. (Doc. # 34 at 26-31).

On January 31, 2007, Defendants filed Objections to the Report and Recommendation asserting: 1) the conclusion that Defendants may be sued in their official capacity is an erroneous application of law; 2) Plaintiff has failed to exhaust his administrative remedies; and 3) Plaintiff cannot state a cognizable claim for a violation of his rights of access to the courts in his criminal appeal because Plaintiff was represented by counsel in the state court proceeding.  Defendants move this Court to exercise its discretion to accept additional evidence regarding the partial grant at the First Formal Level of Review.  Defendants attached to the Declaration of Robert Codd, Litigation Coordinator at the prison, the following four exhibits: (1) Plaintiff's CDCR-602 inmate appeal no. RJD-05-465 (Exhibit A); (2) the first level response to Plaintiff's CDCR-602 inmate appeal no. RJD-05-465 (Exhibit B);   (3) Plaintiff's second level appeal to his CDCR-602 inmate appeal no. RJD-05-465 (Exhibit C); and (4) the second level response to Plaintiff's CDCR-602 inmate appeal no. RJD-05-465 (Exhibit D).  Defendants contend that these documents conclusively demonstrate that additional administrative relief was available to Plaintiff at the time that he failed to complete the appeal process.

On January 31, 2007, Defendants further filed a Request for Judicial Notice in support of the Objections to the Report and Recommendation.  Defendants request that the Court take judicial notice of the Petition for Review to Exhaust State Remedies filed by Plaintiff's

appointed counsel in the Supreme Court State of California on February 28, 2005. Defendants assert that this Petition contests the sentence Plaintiff received in his underlying criminal case and conclusively demonstrates that Plaintiff was represented by counsel at the time that Plaintiff claims denial of access to the courts in this case.

On February 2, 2007, this Court filed an order stating in part: "[t]he newly-submitted evidence attached to Defendants' Objections to Report and Recommendation concerns Defendants' affirmative defense that Plaintiff failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). Because exhaustion is mandatory under § 1997e(a), *see Porter v. Nussle*, 534 U.S. 516, 524 (2002), the Court **GRANTS** Defendants' request that the Court consider its newly-submitted evidence attached to the Objections to Report and Recommendation. *See U.S. v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000) ("[A] district court has discretion ... to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation."). The Court will consider the newly-submitted evidence. Plaintiff is **ORDERED** to file any response to the newly-submitted evidence on or before **March 2, 2007**. In addition, Plaintiff may file any objections to the Report and Recommendation no later than **March 2, 2007**. Any reply to Plaintiff's responses or objections must be filed no later than **March 12, 2007**." (Docket #37).

On February 6, 2007, this Court filed the following "Notice to Plaintiff":

This notice is given pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999) and *Wyatt v. Terhune,* 315 F.3d 1108,1120 n.14 (9th Cir. 2003).

Defendants have moved for the dismissal of Plaintiff's Complaint for multiple reasons, including because Plaintiff allegedly failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the Court may look beyond the pleadings and decide disputed issues of fact. If the Court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice. *See Wyatt v. Terhune,* 315 F.3d at 1120.

This notice is intended to provide Plaintiff with fair notice of his opportunity to develop a record. Plaintiff shall file any response to Defendant's motion to dismiss including any specific facts in declarations or authenticated documents no later than **March 2, 2007**. Defendant shall file any reply no later than **March 12, 2007**. The Court will rule thereafter.

(Doc. # 38).

05CV1871WQH

On February 8, 2007, this Court filed an order granting Plaintiff's motion for extension of time to March 2, 2007 to file any response to Defendants' newly-submitted evidence or any objections to Report and Recommendation. (Doc. #41).

On March 9, 2007, this Court filed an order granting Plaintiff a second extension of time to March 23, 2007 to file any response to Defendants' newly-submitted evidence or any objections to the Report and Recommendation. (Doc. #45).

Plaintiff has filed no response to Defendants' newly-submitted evidence or any objections to the Report and Recommendation.

## **LEGAL STANDARDS**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim can be dismissed only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1974). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *See N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Pursuant to *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), the proper vehicle for challenging a prisoner's complaint for his failure to comply with 42 U.S.C. § 1997e(a)'s exhaustion requirement is to file "an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt*, 315 F.3d at 1119. When addressing this unenumerated 12(b) motion, the Court is not compelled to accept all of Plaintiff's allegations as true. "In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119-20. Even though the Court may look beyond the pleadings and address factual disputes, "defendants have the burden of raising and

1   proving the absence of exhaustion." *Wyatt*, 315 F.3d at 1119.  Defendants must prove that

2   relief remained available, either at unexhausted levels of the grievance process or through

3   awaiting the results of relief already granted.  *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir.

4   2005).

5                                    **DISCUSSION**

6   **A.  Sovereign Immunity**

7       Generally, the Eleventh Amendment provides that states are immune from "private

8   damage actions brought in federal court." *Henry v. County of Shasta*, 132 F.3d 512, 517 (9th

9   Cir. 1997).  As a result, actions against a state official acting in his official capacity are also

10  barred by the Eleventh Amendment.  *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429

11  (1997); *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999).  Defendants correctly

12  assert that they are entitled to dismissal in their official capacity on the grounds of sovereign

13  immunity.  *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1958) (the personal immunity

14  defenses such as objectively reasonable reliance on existing law are unavailable in an official

15  capacity action).  Defendant's Motion to Dismiss all claims against Defendants in their official

16  capacities is granted.

17  **B.  Rule of Exhaustion**

18      Defendants contend that Plaintiff failed to exhaust the administrative review process

19  set out in Title 15 of the California Code of Regulations prior to filing this Complaint.  Plaintiff

20  asserts that he does not have the burden of producing this evidence for the Court and that he

21  exhausted his administrative remedies by advancing inmate appeal RJD 04-1037 to the Third

22  Level of Review on May 25, 2005.

23      The Prison Litigation Reform Act of 1995 states: "No action shall be brought with

24  respect to prison conditions under section 1983 of this title, or any other Federal law, by a

25  prisoner confined in any jail, prison, or other correctional facility until such administrative

26  remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under Section 1997e(a), "no

27  claim may be pursued in court unless the prisoner has given the prison authorities an

28  opportunity to consider providing some relief regarding the facts underlying the grievance."

*Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005).  "Exhaustion is no longer left to the discretion of the district court, but is mandatory."  *Woodford v. Ngo*, __ U.S. __, 126 S. Ct. 2378 (2006).  In *Woodford*, the United States Supreme Court described the grievance system for prisoners in the California prison system:

> To initiate the process, an inmate must fill out a simple form, Dept. of Corrections, Inmate/Parolee Appeal Form, CDC 602 (12/87) (hereinafter Form 602), that is made "readily available to all inmates." Cal.Code Regs., tit. 15, § 3084.1(c) (2004).  The inmate must fill out two parts of the form: part A, which is labeled "Describe Problem," and part B, which is labeled "Action Requested." Then, as explained on Form 602 itself, the prisoner "must first informally seek relief through discussion with the appropriate staff member."  App. 40-41.  The staff member fills in part C of Form 602 under the heading "Staff Response" and then returns the form to the inmate.

> If the prisoner is dissatisfied with the result of the informal review, or if informal review is waived by the State, the inmate may pursue a three step review process. See §§ 3084.5(b)-(d).  Although California labels this "formal" review (apparently to distinguish this process from the prior step), the three step process is relatively simple.  At the first level, the prisoner must fill in part D of Form 602 . . .  [and] submit the form, together with a few other documents, to the prison's Appeal Coordinator within 15 working days - three weeks- of the action taken. § 3084.6(c) . . . Within 15 working days after an inmate submits an appeal, the reviewer must inform the inmate of the outcome by completing part E of Form 602 and returning the form to the inmate.

> If the prisoner receives an adverse determination at the first level, . . . the inmate may proceed to the second level of review conducted by the warden. § 3084.5(c), (e)(1).  The inmate does this by filling in part F of Form 602 and submitting the form within 15 working days of the prior decision.  Within 10 working days thereafter, the reviewer provides a decision on a letter that is attached to the form.  If the prisoner's claim is again denied or the prisoner is otherwise dissatisfied with the result, the prisoner must explain the basis for his or her dissatisfaction on part H of the form and mail the form to the Director of the California Department of Corrections and Rehabilitation within 15 working days. § 3084.5(e)(2).  An inmate's appeal may be rejected where "[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints."  § 3084.3(c)(6).

126 S. Ct. at 2383.

**Inmate appeal RJD 04-1037**

Inmate appeal RJD 04-1037 contained allegations at the first level of review of trust account fraud which took place in July of 2004.  At the second level of review, Plaintiff added the assertion that the confidentiality of his legal work was compromised by the design of the prison law library.  The Magistrate Judge correctly concluded that inmate appeal RJD 04-1037 which involved actions which took place in July of 2004 does not satisfy the exhaustion

requirements of 42 U.S.C. § 1997e(a).  The purpose of the exhaustion requirement is to curtail frivolous lawsuits by providing administrators and Defendants with adequate notice of prison problems prior to any filing of suit.  This affords prison administrators the opportunity to remedy legitimate problems and affords potential Defendants the opportunity to amend problematic behavior, without the resource-consuming involvement of the court system.  An inmate appeal which predates the alleged injury does not provide notice to prison administrators and would not satisfy the overriding purpose of the exhaustion requirement.  Allowing an appeal that was already pending at the time of the alleged injury and involved unrelated factual allegations to satisfy the requirements of Section 1997e(a), would defeat the purpose of the exhaustion requirement. Prison administrators cannot remedy problems which have not happened yet.

**Inmate appeal RJD-05-465**

Inmate appeal RJD-05-465 was submitted by Plaintiff on March 4, 2005.  This appeal was denied at the informal level, partially granted at the first formal level of review, and denied at the second formal level of review.  This appeal was not advanced to the third, or director's level of review.  (Decl. of J.T. Stovall at 3; *see also* Decl. of N. Grannis at 3).

Plaintiff stated in inmate appeal RJD-05-465:

Describe Problem: I have a court deadline of midnight March 6, 2005.  I went to the law library on Friday March 4, 2005 at 1036 hrs.  I presented my Petition for photocopying to I/M Clerk Russell and Freestaff Laguna.  Russell said the machine needs a part and is inoperable.  He also said that Mrs. Peterson could allow him to go to Central Control to make the copies if she determines that I have a court deadline.  Laguna aquiesced I/M Russell's statement.  Laguna said he was not competent to make that determination but that Mrs Peterson could on Monday March 7, 2005 or 8 hours <u>after</u> my deadline passed.

Action Requested: Emergency photocopying of my legal documents. Petition for Review in the Cal. Supreme Court.  Staff nor inmates cannot read my documents.

Exhibit A to the Declaration of Cobb.

This appeal was denied at the Informal Level of Review by Lt. Seibel stating "I was unable to determine or locate any documentation to support your claim of a court deadline or a need to copy....In the future I urge you to not wait until the last minute to address these types of issues." (Exhibit A  to the Declaration of Cobb).  Plaintiff appealed to the first formal level

1  of review stating in part as follows: "The filing deadline can be verified by a document I

2  possess as well as in on file in the law library since 2-1-05."  (Exhibit A).

3      On April 19, 2005, the appeal was "Partially Granted" at the First Level Review as

4  follows:

5          In reaching a decision on this issue, a thorough review of your appeal has been
           conducted. Mr. J. Laguna, Library Technical Assistant, interviewed you at 1035
6          hours on April 8, 2005.  This issue was also discussed with Ms. Peterson, Senior
           Librarian.
7          Your contention that you have legal statutory deadlines has been demonstrated
           for the time period of February 1, 2005 through February 25, 2005.  There is no
8          documentation of Judicial Exception status for the months of March or April
           2005. ...
9          In the future, if you have issues with inmate library clerks doing photocopies,
           inform the library staff.  You did not inform any of the library staff of your
10         photocopy concerns.
           Therefore, based upon the aforementioned information, this appeal is Partially
11         Granted at the First Level of Review.

12  (Exhibit B to the Declaration of Cobb).

13     On May 20, 2005, Plaintiff filed a second level appeal in RJD 05-465 contesting the

14  finding that he was not entitled to Judicial Exception status for the month of March.  Plaintiff's

15  Second Level Appeal specifically stated that he applied to the librarian for an extension of

16  Judicial Exception status on February 22, 2005; that the librarian denied the extension; and that

17  this denial was the direct cause of Defendant Laguna's decision not to make special

18  arrangements for his photocopies on March 4, 2005.  (Exhibit C to the Declaration of Cobb at

19  1).

20     On June 3, 2005, the Chief Deputy Warden denied the appeal at the Second Level of

21  Review stating in part as follows:

22         There is no documentation of J.E. status for the months of March or April 2005
           (see attached paperwork).  For additional priority status to the library, you have
23         to be granted J.E. status.  J.E. status is not something granted by the court, but
           authorized by the California Department of Corrections policy....
24
25         During the interview with T. Melvin, you alluded to your copies not being done
           on time because the copy machine was broken.  The attached paperwork details
26         the procedure for copying.  You admitted that you brought your legal papers to
           the library on the Friday prior to your Sunday case deadline.  When the Law
27         Library copier machine is broken, the Law Library staff must use other
           institutional copy machines.  In most cases when this occurs, the Law Library is
28         limited in the number of copies they can provide and/or there is a delay.

           When this situation occurs, an inmate must request from library staff a "Request

for Extension of Time" (attached). The "Extension of Time" allows the court to review your situation and grant you additional time where it is appropriate. It is the inmate's responsibility to file for the extension and to avoid possible problems by following procedure. It is not the responsibility of the Law Library Staff to file documentation requesting an extension. You *failed* to follow this procedure. ...

Therefore, based upon the aforementioned information, this appeal is **Denied** at Second Level of Review.

(Exhibit D). This appeal was not advanced to the Third, or Director's Level of Review. (Decl. Of Stovall at 3; *see also*, Decl. Of Grannis at 3).

Section 1997e(a) expressly provides for mandatory exhaustion of administrative remedies prior to any action "with respect to prison conditions." 42 U.S.C. § 1997e(a). The Court does not have discretion to dispense with this administrative exhaustion requirement. *Booth*, 532 U.S. at 739. The Supreme Court has "stress[ed] the point ... that [it] will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Id*. at 741 n.6.

Congress enacted the PLRA "to curtail frivolous prisoners' suits and to minimize the costs - which are borne by taxpayers - associated with those suits." *Madrid v. Gomez*, 190 F. 3d 990, 996 (9th Cir. 1999). In *Woodford v. Ngo,* __ U.S. __, 126 S.Ct. 2378 (2006), the Supreme Court explained that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to affor[d] correction officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 2387. (quotation omitted) (footnote omitted). The Supreme Court has concluded that the Prison Litigation Reform Act requires proper filing of a timely grievance for all claims with respect to prison conditions in order to give prisoners an effective incentive to make full use of the prison grievance process and provide prisons with a fair opportunity to correct their own errors. The Supreme Court noted that "this is particularly important in relation to state corrections systems because it is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of prisons." *Id*. at 2388 (quotation omitted). "When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned

1  while memories are still fresh, and evidence can be gathered and preserved." *Id.*

2      In cases where a plaintiff's inmate appeal is partially granted at an intermediate level of

3  review, the defendant has the burden to demonstrate that some relief remained available for the

4  plaintiff at the time plaintiff failed to complete the administrative review process. *Brown v.*

5  *Valoff*, 422 F.3d 926, 938 (9th Cir. 2005). In *Brown*, the Court of Appeals explained:

6      We conclude ... that a prisoner need not press on to exhaust further levels of
       review once he has either received all "available" remedies at an intermediate
7      level of review or been reliably informed by an administrator that no remedies are
       available.

8      ... [S]ome inquiry into the purpose of the PRLA exhaustion requirement will aid
9      our application of the no-relief limitation on that requirement. *Porter* [*v. Nussle*,
       534 U.S. 516 (2002)],summarized that purpose, expansively, as "afford[ing]
10     corrections officials time and opportunity to address complaints internally before
       allowing the initiation of a federal case." 534 U.S. at 525, 122 S.Ct. 983. By
11     providing this opportunity, Congress expected, frivolous cases might be not be
       pursued, "corrective action taken in response to an inmate's grievance might
12     improve prison administration and satisfy the inmate, thereby obviating the need
       for litigation," and "for cases ultimately brought to court, adjudication could be
13     facilitated by an administrative record that clarifies the contours of the
       controversy." *Id.*
14
15  422 F.3d at 935-936.

16      The record in this case demonstrates that relief remained available in the grievance

17  process regarding the facts underlying the claim stated in the Complaint in this action at the

18  time that Plaintiff failed to complete the grievance process. Plaintiff filed a grievance in inmate

19  appeal 05-465 relating specifically to the facts underlying this Complaint through informal

20  review, the first level of review and the second level of review. The record establishes that

21  prison officials concluded on April 19, 2005 that "this appeal is **Partially Granted** at the First

22  Level of Review." (Exhibit B to the Declaration of Cobb). The appeal decision at the First

23  Level of Review specifically stated that "Your contention that you have legal statutory

24  deadlines has been demonstrated for the time period of February 1, 2005 through February 25,

25  2005. There is no documentation of Judicial Exception status for the months of March or April

26  2005." *Id.* Plaintiff's claim that he had Judicial Exception status on March 4, 2006 which

27  forms the basis for the allegations of the Complaint in this case was rejected by prison officials.

28  The prison officials unambiguously found that Plaintiff was not entitled to Judicial Exception

status for the month of March. The conclusion of "Partially Granted" related specifically to

the finding that Plaintiff "demonstrated for the time period of February 1, 2005 through February 25, 2005." *Id*. The record clearly demonstrates that Plaintiff understood that the partial grant related only to the period of February 1, 2005 through February 25, 2005. On April 20, 2005, Plaintiff filed a Second Level Appeal of inmate appeal RJD-05-465 in order to pursue his contention that he was entitled to Judicial Exception status on March 4, 2005 when Defendant Laguna refused his photocopy request. Plaintiff stated in his Second Level Appeal "that on March 4, 2005 @ 1036 hrs. I presented my completed petition for review, with exhibits, and a completed CDD Form 193, inmate trust withdrawal, to LTA Laguna for photocopying....that Mr. Laguna had actual notice of my court deadline ...[and] that this refusal to provide me with photocopies resulted in the court's rejection of my petition." (Exhibit C to the Declaration of Cobb at 1-2). Plaintiff's second level appeal filed on May 20, 2005 clearly demonstrates that Plaintiff understood the partial grant at the first level of review did not resolve his complaint regarding Defendant Laguna's refusal to provide his photocopies on March 4, 2005. On June 3, 2005, Plaintiff's appeal was "Denied at the Second Level of Review." (Exhibit D to the Declaration of Cobb). After this denial of his appeal at the Second Level of Review, Plaintiff did not advance inmate appeal RJD 05-465 to the Third or Director's Level.

A inmate in the California prison system must complete four steps: (1) attempted informal resolution, (2) first formal level appeal, (3) second formal level appeal, and (4) third or director's level appeal. Cal. Code Regs. 15 § 3084.5. Under this scheme, the administrative process is exhausted only after the inmate receives a decision from the Director. Cal. Dep't of Corrections Operations Manual, § 54100.11 ("Levels of Review"); *Barry v. Ratelle*, 985 F. Supp. 1235, 1237-38 (S.D. Cal. 1997). Pursuant to the grievance procedure Plaintiff was entitled to advance inmate appeal RJD 05-465 to the third or director's level and failed to exhaust this appeal.

Defendants have demonstrated with evidence in the record that Plaintiff failed to exhaust all available administrative remedies regarding the facts alleged in the Complaint prior to filing this action. There are no factual or legal grounds upon which to grant Plaintiff an exception to

the mandatory requirement of Section 1997e(a).  Defendants' motion to dismiss is granted without prejudice.  The Court will not grant leave to amend on the grounds that it would be futile.

**Plaintiff's Application for an order enjoining prison officials (Doc. # 35).**

Plaintiff moves the Court for an order enjoining prison officials to issue Plaintiff his personal property and legal materials. Plaintiff contends that prison officials have exhibited deliberate indifference to his verbal and written requests for his legal papers.

The record establishes that Plaintiff was transferred from Donovan Correctional Facility and arrived at Pleasant Valley State Prison on December 27, 2006; that Plaintiff was in possession of all of his allowable property transferred from Donovan on January 12, 2007; that Plaintiff was transferred to administrative segregation for mutual combat; and that Officer Mendenhall  personally delivered all of Mr. Ruiz's property back to him on January 26, 2007. The Court has no legal or factual basis to enjoin prison officials at Pleasant Valley State Prison.

## CONCLUSION

It is hereby ordered that (1) the Report and Recommendation of the United States Magistrate Judge filed on January 10, 2007 (Doc. #34) is not adopted; (2) Defendants' Motion to Dismiss Plaintiff's Complaint and to Strike (Doc. # 12) is granted without prejudice; and (3) Plaintiff's Application for an order enjoining prison officials (Doc. # 35) is denied.  Clerk of the Court is directed to close this case.

DATED:  March 28, 2007

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge